WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Alberto Chavez-Dorame,<br><br>Petitioner,<br><br>v.<br><br>United States of America,<br><br>Respondent. | No. CV-20-531-TUC-JAT<br>CR-19-633-TUC-JAT<br><br>**ORDER** |

Pending before the Court is Petitioner Jesus Chavez-Dorame's Motion to Vacate, Set Aside, or Correct under 28 U.S.C. § 2255. (Doc. 1). Petitioner is requesting an evidentiary hearing to challenge his conviction for Reentry of a Removed Alien pursuant to 8 U.S.C. § 1326. (Doc. 1 at 6). Petitioner did not appeal this conviction or his resulting sentence. (Doc. 1 at 2). Petitioner now brings this motion following the vacating of his underlying state court conviction and dismissal of his prior removal order on February 10, 2020 and March 19, 2020 respectively. (Doc. 1 at 5–6). The motion is fully briefed and this Court now rules.

**I.   Factual Background**

On September 25, 2000, Petitioner, a lawful permanent resident at the time, pled guilty to Attempted Transportation of Marijuana for Sale under A.R.S. § 13-3405, a felony. (Doc. 1 at 2). As a result, an immigration judge ordered Petitioner to be removed from the United States on November 21, 2002. (Doc. 9). Petitioner was discovered in Arizona by Border Patrol Agents on February 15, 2019 and was subsequently charged with Reentry of

a Removed Alien under § 1326. (Doc. 9 at 1–2). On September 9, 2019, Petitioner pled guilty to the mentioned charge and on December 4, 2019 he was sentenced to time served and 36 months of supervised release. (Doc. 1 at 1).[1]

On December 13, 2019 Petitioner filed a motion to withdraw from his state court guilty plea. (Doc. 9 at 3). Petitioner and the State then entered a stipulation on February 10, 2020 vacating the state court conviction. (Doc. 9 at 3). This resulted in the Department of Homeland Security (DHS) filing a motion to dismiss the 2002 removal proceedings. (Doc. 9 at 4). On March 19, 2020 an immigration judge subsequently granted this motion. (Doc. 9 at 4). With the underlying removal order dismissed, Petitioner filed the instant § 2255 motion to vacate his Illegal Reentry conviction. (Doc. 1 at 11).

**II.     Motion to Vacate**

Petitioner argues that because his underlying state court conviction was vacated and his removal order was dismissed, he is entitled to relief under § 2255. (Doc. 1 at 6–10). The Government argues that the terms of Petitioner's plea agreement included a collateral attack waiver precluding a § 2255 motion, and that Petitioner procedurally defaulted on challenging his removal order. (Doc. 9 at 5, 14).

Under 28 U.S.C. § 2255, a petitioner may file a motion requesting the Court which imposed the sentence upon him to vacate, set aside, or correct the sentence. Such a motion may be brought on the following grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." § 2255; *see United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). To warrant relief under § 2255, a petitioner must allege a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 783

---

[1] Petitioner is currently "in custody" for purposes of § 2255 because he is on supervised release. Upon conclusion of supervised release (predicted to be December 4, 2022), Petitioner will no longer be considered "in custody" and thus ineligible for relief under 28 U.S.C. § 2255. *See United States v. Reves*, 774 F.3d 562, 564–565 (9th Cir. 2014).

(1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

### A. Collateral Attack Waiver

The Government argues that Petitioner should be barred from bringing a § 2255 motion because collateral attacks were expressly waived in Petitioner's plea agreement. (Doc. 9 at 5). Petitioner argues that certain constitutional violations are effectively non-waivable and he can show such constitutional violations exist in this case; therefore, Petitioner concludes that his collateral attack waiver in his plea agreement is not enforceable in this case. Accordingly, Petitioner seeks to use this § 2255 motion to set aside his conviction in this case and withdraw from his plea agreement.

### 1. Governing Law

If a petitioner expressly waives his rights to appeal or collaterally attack his sentence, the district court lacks jurisdiction to consider his § 2255 motion. *United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999) ("It would overreach our jurisdiction to entertain an appeal when the plea agreement effectively deprived us of jurisdiction."). Plea agreements are "essentially contracts" and are to be enforced pursuant to their literal terms, construing any ambiguities in the defendant's favor. *United States v. Heredia*, 768 F.3d 1220, 1230 (9th Cir. 2014). "A waiver of appellate rights is enforceable if (1) the language of the waiver encompasses the defendant's right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Medina–Carrasco*, 815 F.3d 457, 461 (9th Cir. 2015) (internal quotations omitted). The appeal waiver will not apply if: (1) a defendant's guilty plea failed to comply with Rule 11 of the Federal Rules of Criminal Procedure; (2) the sentencing judge informs a defendant that he or she retains the right to appeal; (3) the sentence does not comport with the terms of the plea agreement; or (4) the sentence is illegal. *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007) (collecting cases). A sentence is illegal if "it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Id.* Outside of these exceptions, if a petitioner waives his right to attack his judgment and sentence by way of a § 2255 motion "for the purpose of obtaining certain concessions from the Government" then "he may not [ ] ignore

his part of the bargain." *United States v. Navarro–Botello*, 912 F.2d 318, 322 (9th Cir. 1990).

### 2. Analysis

In the present case, Petitioner does not contest that he entered the plea agreement for his § 1326 charge knowingly and voluntarily. (Doc. 16 at 18). An examination of the plea agreement reveals that it includes a description of Petitioner's waiver of the right to appeal on the grounds raised. (Doc. 9-6 at 3–4). Further, the plea agreement states: "The defendant further waives. . . (3) any right to collaterally attack defendant's conviction and sentence under 28 U.S.C. § 2255. . ." (Doc. 9-6 at 4). Additionally, none of the justifications for invalidating the plea agreement waiver exist here. The plea agreement complied with Rule 11 of the Federal Rules of Criminal Procedure. (Doc. 9-8 at 7–9); Fed. R. Crim. P. 11. The Court did not inform Petitioner that he retained the right to appeal. (Doc. 9-8 at 7–9). Finally, the sentence did not violate the terms of the plea agreement or the law. (Doc. 9-8 at 7–9). Thus, none of the *Bibler* justifications for not enforcing the plea agreement waiver exist here. *See Bibler*, 495 F.3d at 624.

In his § 2255 motion, Petitioner makes no argument that he can meet any of the *Bibler* reasons for being allowed to collaterally attack his conviction and plea agreement even though the plea agreement contains a waiver of such collateral attacks. (Doc. 1). Indeed, the motion never cites *Bibler*. (*Id.*). However, Petitioner nonetheless argues that he may collaterally attack his conviction because he argues his conviction in this case is based on a fundamental defect resulting in a miscarriage of justice. Thus, in his motion, Petitioner, in practical effect, argues that the *Bibler* factors for when a negotiated plea agreement's waiver can be overcome do not apply if Petitioner can show a fundamental defect which inherently results in a complete miscarriage of justice under *Davis v. United States,* 417 U.S. 333, 345 (1974). (Doc. 1 at 9).[2] In his Reply, however, Petitioner amends

---

[2] The miscarriage of justice standard from *Davis* has been interpreted as requiring Petitioner to show the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003).

- 4 -

his argument to argue that *Bibler* permits this § 2255 motion because his sentence (which was constitutional at the time Petitioner received it) is now unconstitutional based on a change in circumstances.  (Doc. 16 at 18).

In its response, the Government first argues that Petitioner is bound by the collateral attack waiver in his plea agreement even though after the fact his calculus for entering the plea agreement changed.  (Doc. 9 at 11) ("*See Brady v. United States*, 397 U.S. 742, 756-57 (1970) ('A defendant is not entitled to withdraw his plea merely because he discoverers long after the plea has been accepted that his calculus misapprehended the quality of the state's case or the likely penalties attached to alternative courses of action[']).").  As part of this argument, the Government argues that Petitioner in this case cannot meet any of the four exceptions in *Bibler*.  (Doc. 9 at 5-10).  Second, the Government argues that even if the fundamental miscarriage of justice standard of *Davis* permits a gateway around the *Bibler* factors, no fundamental miscarriage of justice occurred in this case.  (Doc. 9 at 11).

In deciding whether *Davis* provides a gateway around *Bibler*, the Court notes that while *Davis* was discussing when a collateral attack of a sentence under § 2255 was permissible, *Davis* was not discussing the specific issue of when a waiver bargained for in a plea agreement in exchange for certain benefits is enforceable.  The latter is specifically what *Bibler* addressed.  Petitioner never directly argues that a fundamental defect that results in a miscarriage of justice nullifies a collateral attack waiver in a plea agreement; nonetheless that is effectively what Petitioner argues by citing *Johnson v. United States*, 544 U.S. 295, 308 (2005) and *Daniels v. United States*, 532 U.S. 374 (2001) for the global proposition that if Petitioner's underlying predicate conviction is vacated, he can always bring a § 2255 motion.  (Doc. 16 at 4-6).  Like *Davis*, neither *Johnson* nor *Daniels* were addressing the enforceability of a collateral attack waiver as part of a bargained for plea agreement.  Similarly, while the Government never directly says a fundamental defect resulting in a miscarriage of justice will not overcome a collateral attack waiver in a plea agreement, that is effectively what the Government argues by arguing that Petitioner can only be excused from his collateral attack waiver for the reasons articulated in *Bibler*.

(Doc. 9 at 8).[3]

It is undisputed that Petitioner received certain benefits in exchange for entering a plea agreement. As the Government recounts:

> Here the Petitioner agreed to waive his right to bring a collateral attack in exchange for a very significant benefit: a two-level reduction for "fast track" pursuant to U.S.S.G. § 5K3.1 The plea agreement also allowed Petitioner to argue for a variance pursuant to 18 U.S.C. § 3553(a) in support of a sentence request below the stipulated ranges in the agreement.

(Doc. 9 at 9).

Thus, the Court must determine whether the collateral attack waiver in a bargained for plea agreement is subject to a fundamental miscarriage of justice gateway that excuses Petitioner from meeting one of the *Bibler* factors. Alternatively, the Court must consider Petitioner's alternative argument that his sentence is now "illegal" based on a change of circumstances such that he can meet the fourth *Bibler* exception to a collateral attack waiver.

### a.     Is There a Gateway Around *Bibler*?

Turning first to whether Petitioner can gateway around the *Bibler* exceptions to enforcing a collateral attack waiver by arguing a miscarriage of justice, the Court notes that other courts have summarized the Ninth Circuit's *Bibler* factors as being the iteration of the Ninth Circuit's equivalent of a miscarriage of justice standard as it relates to the unenforceability of waiver in plea agreements. *See N. Mariana Islands v. Lin*, No. 2014-SCC-0008-CRM, 2014 WL 7330726, at *3 (N. Mar. I. Dec. 18, 2014). Assuming the Supreme Court of the Commonwealth of the Northern Mariana Islands was correct in its summary of Ninth Circuit law, Petitioner cannot gateway around the very factors that define what amounts to a miscarriage of justice by arguing an alternative definition of a

---

[3] Specifically, the Government states:
"[A] defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *See United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005)) (internal quotation marks omitted). Accordingly, Petitioner's claims that his illegal reentry conviction should be vacated are barred by Petitioner's waiver. For this reason, Petitioner's motion should be denied outright.
(Doc. 9 at 8).

miscarriage of justice.

The Court has found no law, and Petitioner has cited no law, that allows this Court to use some factors or test other than *Bibler* for when a Petitioner's collateral attack waiver will not be enforced against him in this circuit. (As the Supreme Court of the Commonwealth of the Northern Mariana Islands noted, other circuits have adopted various tests, formulas, or factors that differ from the Ninth Circuit. *See Lin*, 2014 WL 7330726, at *2-3 (collecting cases). For example, the Third Circuit appears to have adopted the very "fundamental miscarriage of justice" exception Petitioner seeks in this case. *See United States v. Mabry*, 536 F.3d 231 (3d Cir. 2008) (affirming the enforcement of a defendant's waiver of direct appeal and collateral challenge rights, even with respect to claims of ineffective assistance of counsel, where the waiver was knowing and voluntary and its enforcement would not work a miscarriage of justice).).

Finding no law in this Circuit that supports that an exception to *Bibler* exists, the Court will only excuse Petitioner from his collateral attack waiver if he can show he meets on of the factors of *Bibler*.

### b. *Bibler's* fourth exception

The totality of Petitioner's argument that he can meet the fourth exception in *Bibler* is found in his Reply at pages 17-20. In sum, Petitioner argues:

> Even the government acknowledges that there is an exception to the collateral attack waiver in the plea agreement "where the sentence violates that law by 'exceeding the permissible statutory penalty for the crime or violates the Constitution." Gov. Response at page 7 citing *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). Here, now that the state conviction has been vacated on constitutional grounds, the § 1326 sentence violates the Constitution. So even if the plea waiver did apply to a § 2255 motion based on a vacated state conviction, an exception would also apply as the sentence now violates the Constitution.

(Doc. 16 at 18).

Petitioner makes a multilayered argument as to how his sentence violates the Constitution. First, he argues that his 2001 state court conviction which lead to his removal order was obtained based on a constitutional violation. Then he argues that when his state court conviction was vacated in 2020, his removal order was no longer valid. Then he

- 7 -

1 argues that allowing the conviction in this case to stand when his underlying removal order has been dismissed would subject him to an unconstitutional sentence.

As indicated, Petitioner claims that his underlying state conviction was vacated on constitutional grounds. (Doc. 16 at 18). Notably, however, Petitioner does not allege that a constitutional violation occurred in his federal proceedings. (Doc. 1 at 8).

Generally, a federal defendant may not challenge the constitutionality of his state court conviction that is serving as a predicate for his federal charge unless the challenge to the state sentence is based on the absence of counsel. *See Custis v. United States*, 511 U.S. 485, 496–497 (1994). Thus, generally, a prior conviction that a defendant alleges is constitutionally invalid may nonetheless serve as the predicate felony in a subsequent federal conviction. *See Lewis v. United States*, 445 U.S. 55, 65 (1980) (holding that a criminal statute was broadly written to indicate that a defendant's status as a felon at the time of the conviction was dispositive, not the Constitutional challenges to the underlying felony); *United States v. Padilla*, 387 F.3d 1087, 1091 (9th Cir. 2004) (holding that a vacated underlying state level conviction validly supported a federal conviction). The Supreme Court in *Custis* stated:

> Custis invites us to extend the right to attack collaterally prior convictions used for sentence enhancement beyond the right to have appointed counsel established in *Gideon*. We decline to do so. We think that since the decision in *Johnson v. Zerbst* more than half a century ago, and running through our decisions in *Burgett* and *Tucker*, there has been a theme that failure to appoint counsel for an indigent defendant was a unique constitutional defect. Custis attacks his previous convictions claiming the denial of the effective assistance of counsel, that his guilty plea was not knowing and intelligent, and that he had not been adequately advised of his rights in opting for a "stipulated facts" trial. None of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all.

*Id*. at 496. Specifically, the Ninth Circuit has held that a defendant may not challenge the constitutionality of an underlying state court conviction on appeal following a guilty plea to Illegal Re-entry. *United States v. Gutierrez-Cervantez*, 132 F.3d 460, 462 (9th Cir. 1997) ("The Constitution requires only that collateral attacks in illegal re-entry after deportation

proceedings be allowed on [state] convictions obtained in violation of the right to counsel. As [defendant] had counsel during his state court criminal proceedings, he cannot now challenge those convictions.").

Here, at the time of Petitioner's federal conviction, Petitioner's removal from the United States in 2002 validly served as an element to his § 1326 conviction. *See Lewis*, 445 U.S. at 65 (holding that the language of the criminal statute indicated that a felony conviction was an element of the crime, regardless of whether the felony status was invalidated later). The language of § 1326 treats a prior removal as a status in the same way the statute in *Lewis* treated a felony conviction as a status. 8 U.S.C § 1326(a) ("any alien who-- (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters. . . "). The language is equally sweeping in both cases. Petitioner's change in circumstances does not affect the existence of that removal at the time of his Illegal Re-entry conviction. Thus, generally, unless Petitioner suffered the complete absence of counsel in the state proceeding, this Court cannot inquire into the constitutionality of the predicate state court conviction in the federal case.

Petitioner does not address *Custis* and its progeny directly, but nonetheless impliedly argues that it is not applicable to this case. As far as the Court has surmised, Petitioner impliedly argues that he falls into the category of people whose convictions were vacated by the state court itself, and not the category of people attempting to collaterally attack their state court conviction in federal court. Petitioner specifically argues that once his underlying state court conviction was vacated, the "facts" underlying his federal conviction have changed such that he is excused from his waiver in his plea agreement of the ability to bring a collateral attack. (Doc. 16 at 19). Petitioner cites *Johnson* for the proposition that the vacating of a state court conviction is a new "fact". (*Id*. at 18).

*Johnson* summarized the law regarding allowing a § 2255 motion to challenge a sentencing enhancement that was premised on a state court conviction that was later vacated by the state court as follows:

> The Government shares Johnson's preliminary assumption that if he filed his § 2255 motion in time, he is entitled to federal resentencing now that the State has vacated one of the judgments supporting his enhanced sentence. … Our cases applying these provisions assume … that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated. *Custis v. United States,* 511 U.S. 485 (1994); *Daniels v. United States,* 532 U.S. 374 (2001).
> Such was the premise in *Custis v. United States, supra* ... [in which] we pointed out that a defendant who successfully attacked his state conviction in state court or on federal habeas review could then "apply for reopening of any federal sentence enhanced by the state sentences." *Id.,* at 497.
> *Daniels v. United States*, *supra*, extended *Custis* [and] … acknowledged that a prisoner could proceed under § 2255 after successful review of the prior state conviction on federal habeas under § 2254 or favorable resort to any postconviction process available under state law, *id.,* at 381. We simply added that if the prior conviction was no longer open to direct or collateral attack in its own right, the federal prisoner could do nothing more about his sentence enhancement. *Id.,* at 382.

*Johnson v. United States*, 544 U.S. 295, 302–04 (2005).

Petitioner assumes that resentencing to remove an enhancement is directly analogous to vacating a conviction and withdrawing from a plea agreement but cites nothing for this assumption. Conversely, the Government cites several Ninth Circuit and Supreme Court cases that hold that the vacating of a state court conviction that is the predicate offense underlying a federal conviction is not a basis to set aside the federal conviction. (Doc. 9 at 13 citing *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016); *United States v. Padilla*, 387 F.3d 1087, 1091 (9th Cir. 2004); *Lewis v. United States*, 445 U.S. 55, 65 (1980); *United States v. Romero*, 780 F. App'x 551, 551-52 (9th Cir. 2019); *United States v. Yepez*, 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc)). By way of example, in *Romero,* the Court of Appeals held that in the circumstance where the defendant had been convicted of two prior controlled substances offenses at the time he committed a new federal offense; "[a]ny change in the status of those prior offenses under state law cannot affect that determination." 780 F. App'x at 551-52.

Petitioner attempts to distinguish these cases by arguing that none of them involved a circumstance where the state court conviction was vacated on "constitutional grounds." (Doc. 16 at 7) ("… the Government hasn't cited to a single case where a state conviction was vacated on constitutional grounds and a § 2255 motion was not permitted to reopen

the sentence. Instead, the Government points out cases where the state conviction was vacated on jurisdictional grounds, procedural grounds, a change in state law, or a state court's attempt to alter the facts for purposes of a better federal sentence.").

Petitioner does not explain why the state court conviction being vacated on "constitutional grounds" immediately makes all of the cases cited by the Government inapplicable when the fact that the underlying state court conviction was vacated is the same. Indeed, *Lewis* appears to foreclose this distinction: "We therefore hold that [the law] prohibits a felon from possessing a firearm despite the fact that the predicate felony may be subject to collateral attack on *constitutional grounds*." *Lewis*, 445 U.S. at 65 (emphasis added). Accordingly, the Court finds that Petitioner cannot challenge his *federal* conviction on the basis that his *state* court conviction was invalid on constitutional grounds. In other words, the same law that prohibits a defendant from collaterally attacking a state court conviction in federal court, by analogy, prohibits this Court from reopening or not-reopening a federal conviction based on subsequent state court order only if this Court looks-through to the substance of the state court decision to determine whether the basis for the state court's decision was "constitutional". The exception in *Custis* that allows a defendant to challenge an underlying state court conviction obtained in the absence of counsel would similarly be the only exception that permits a defendant to collaterally attack a federal conviction via a collateral attack to a state court conviction within the federal proceeding. Thus, Petitioner's argument that the fact that he (allegedly) had ineffective assistance of counsel in his state court proceedings is not the absence of counsel required in *Custis* to allow this Court to re-open Petitioner's conviction to allow this current collateral attack on his now-vacated state court conviction.

Moreover, the Court is not convinced that the state court vacated Petitioner's underlying conviction on constitutional grounds. Thus, even if a state court conviction being vacated on "constitution grounds" is a basis for this Court to reopen a final judgment in this federal case, Petitioner cannot show in this case that the state court vacated his conviction on constitutional grounds. Petitioner argues that the state court found that

Petitioner had received ineffective assistance of counsel due to his attorney's failure to advise him of the immigration consequences of his plea agreement under *Padilla v. Kentucky*, 559 U.S. 356 (2010). (Doc. 1-7 and 1-8). Notably, the Supreme Court ruled in *Chadiz v. United States* that *Padilla* does not apply retroactively to cases that are not on direct appeal. 568 U.S. 356, 358 (2013). As noted above, Petitioner was sentenced on his state court conviction in 2001. Thus, in 2020, when the state court set aside Petitioner's state court conviction, *Chadiz* had made clear that *Padilla* did not apply to Petitioner's state court case. As a result, Petitioner's argument that the state court found constitutional error is premised on the assumption that the state court erred in its application of *Padilla*.

The Government, however, argues that the state court vacated Petitioner's state court conviction on state law grounds. (Doc. 9 at 12). Thus, the Government argues that even if this Court were to look into the substance of why the state court conviction was vacated, it was not due to ineffective assistance of counsel (which Petitioner claims is the "constitutional ground" to vacate the state court conviction), but instead due to the state statute that gives the state court judges' wide discretion to vacate convictions. Because this Court has determined that *Custis* makes even Petitioner's theory of ineffective assistance of counsel one that would not allow him to be excused from his collateral attack waiver in his plea agreement, this Court need not resolve the parties' dispute about the state court's basis for its decision. However, alternatively, this Court has reviewed the state court order and finds that the state court correctly applied state law and rejects Petitioner's argument that the state court misapplied federal law. Therefore, even if *Custis* did not limit the constitutional bases this Court can rely on to allow a collateral attack of a state court conviction, there was no underlying constitutional violation in Petitioner's state court case.

As a second alternative, if this Court is incorrect in its determination that the state court correctly applied state law, and did not incorrectly apply federal law, the Court does not accept Petitioner's argument that this Court must accept the state court's findings. In other words, Petitioner argues that this Court must look at the substance of the state court order to determine if there was a constitutional violation but that this Court cannot consider

the merits of whether the state court's order correctly applied constitutional law. This in-depth examination in a collateral forum of a prior state court conviction was exactly what *Custis* intended to avoid. Nonetheless, this Court disagrees that if the Court must look to the state court case to allow a collateral challenge if there was a constitutional violation, this Court cannot independently determine whether there was a constitutional violation. Petitioner cannot have it both ways by arguing that state court convictions vacated on procedural grounds or jurisdictional grounds are not subject to review following a final judgment in federal court, but that constitutional violations are subject to such review; however, this Court cannot decide whether there was a constitutional violation. In sum, the Court finds that *Padilla v. Kentucky* is inapplicable to Petitioner's 2001 case retroactively, and thus, there was no ineffective assistance of counsel and no constitutional violation.[4]

Moreover, even assuming that the state court did in fact find ineffective assistance of counsel and that this Court cannot independently determine whether the state court was correct, the state court accepting a stipulation of the parties to vacate an almost 20 year old state court conviction seemingly solely for the purpose of impacting Petitioner's federal immigration status and Petitioner's federal conviction falls directly under *United States v. Yepez,* 704 F.3d 1087, 1091 (9th Cir. 2012) (en banc) ("State courts cannot be given the authority to change a defendant's federal sentence by issuing a ruling that alters history and the underlying facts.").

Here, if the state court, the state, and the defendant all agreed to misapply federal law to give Petitioner the windfall of setting aside his felony conviction almost 20 years after the fact, and well after Petitioner had completed his 3.5-year prison term on that conviction, such agreement would appear to be solely to undermine this federal conviction. This conclusion is further supported by the fact that the state then offered Petitioner a new

---

[4] For these reasons, the Court also concludes that even if there is a "fundamental miscarriage of justice" gateway around Petitioner having to make a showing that he meets on of the *Bibler* exceptions to when a collateral attack waiver in a plea agreement is enforceable, there was no fundamental miscarriage of justice in this case because there was no constitutional violation.

plea agreement to a lesser charge that changed his immigration status so that he was no longer removable rather than re-try him on the original charges which potentially carried a significantly longer sentence than 3.5 years. This type of agreement specifically to undermine the federal sentence is what *Yepez* held this Court should not recognize and cannot be used as a basis to set aside his federal conviction that was valid at the time judgment entered. Thus, relief will be denied for this further reason.

Nonetheless, even assuming Petitioner is correct that he can use § 2255 to vacate a conviction under the circumstances alluded to in *Johnson* that would permit resentencing to remove a vacated enhancement, Petitioner makes no argument as to how *Johnson* helps him overcome his plea agreement waiver of his right to bring this collateral attack on his federal conviction. Thus, the Court is forced to try to craft Petitioner's argument as to how, exactly, Petitioner purports to merge his claim that his state sentence is now vacated "on constitutional grounds" into *Bibler's* fourth exception to the enforcement of a plea agreement waiver: namely that the waiver is unenforceable when the federal sentence is illegal or violates the constitution.

Petitioner makes no argument that his sentence was illegal or unconstitutional at the time it was pronounced. Further, Petitioner makes no argument that his sentence violates the law or the constitution now as it is within the range of appropriate sentences for a § 1326 conviction. Instead, he argues that if his sentence were to be set aside now, the Government could not try and convict him under the current facts; thus, his sentence must be illegal.

For the reasons discussed supporting this Court's conclusion that Petitioner's state court conviction was not the product of a constitutional violation and given that Petitioner makes no argument that his federal conviction was the product of a constitutional violation, the Court finds that Petitioner fails to meet the fourth prong of *Bibler*. Petitioner's federal conviction and sentence was neither illegal nor did it violate the constitution. Accordingly, the Court finds that the waiver of the right to collaterally attack Petitioner's federal sentence via a § 2255 motion in his plea agreement is enforceable. Accordingly, the Court

is without jurisdiction to grant Petitioner relief in this case. *See United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999).

### B.     Procedural Default

Alternatively, the Government argues Petitioner procedurally defaulted the issues raised in his § 2255 motion by not raising them on direct appeal. (Doc. 9 at 14). Petitioner argues that he is challenging his § 1326 conviction based on a newly revealed fact not previously available, the vacating of his 2002 removal order, and thus did not procedurally default on the issue. (Doc. 16 at 12).[5]

#### 1.     Governing Law

A petitioner procedurally defaults on any claim not raised on direct appeal unless he can demonstrate either "cause and actual prejudice" or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see also Medrano v. United States*, 315 F.2d 361, 361-62 (9th Cir. 1963) (finding petitioner's challenge of evidentiary sufficiency for jurisdictional fact of drug possession in federal narcotics conviction was procedurally defaulted). A petitioner makes a sufficient showing of cause where "the factual or legal basis for a claim was not reasonably available to counsel" at the time of direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *See Gonzalez v. United States*, No. SA CR 11-0259-DOC, 2014 WL 683865 (C.D. Cal. Feb. 19, 2014). A petitioner satisfies the prejudice prong by demonstrating that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). If a petitioner cannot demonstrate the "cause" and "prejudice" prongs to excuse procedural default, then he is only entitled to relief if he can demonstrate "actual innocence." *See Bousley*, 523 U.S. at 166. To establish

---

[5] The proper mechanism for challenging a removal order is through a § 1326(d) motion, which Petitioner did not make. *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1619 (2021). In this case, because the Court has found Petitioner's plea waiver to be enforceable, this Court need not determine whether Petitioner would have been required to comply with § 1326(d) before having this Court recognize the current status of his removal order for purposes of setting aside his conviction. The Court notes that the parties disagree on the answer to this issue. (*See* Docs. 18 at 3 and 19 at 4-5).

"actual innocence", a petitioner must demonstrate that, it is more likely than not that no reasonable juror would have convicted him. *Id*. (internal quotations omitted).

### 2. Analysis

As discussed above, the Court has found that the collateral attack waiver in Petitioner's plea agreement is enforceable in this case. Alternatively, the Court also finds Petitioner's claim is procedurally defaulted. Petitioner did not raise the claim of ineffective assistance of counsel during his underlying state criminal proceedings in 2000 or his initial removal proceedings in 2002. (Doc. 1 at 3). Petitioner conceded a basis in law and fact existed for him to challenge his state level conviction at that time, yet he made no such effort. (Doc. 1-6 at 12). Petitioner also did not challenge the validity of his removal order during his Illegal Re-entry prosecution in 2019, or through appeal. (Doc. 1 at 4). Multiple mechanisms existed for doing so, including a motion under § 1326(d) or a request to stay the proceedings until his state level claim was resolved. *See Wiedersperg v. I.N.S.*, 896 F.2d 1179, 1183 (9th Cir. 1990) (allowing a re-opening of deportation proceedings after the state level conviction they were based on was vacated). By failing to raise any issue regarding his state court conviction or his removal order, Petitioner procedurally defaulted any challenges to those proceedings. *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir.2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."). As previously stated, all the necessary facts and supporting law to challenge Petitioner's underlying state level conviction existed at the time of his initial removal proceedings and his Illegal Re-entry proceedings. Thus, it cannot be said that there was no "factual or legal basis for a claim" at the time of direct appeal from those proceedings. *Murray*, 477 U.S. at 488. Petitioner has not demonstrated "cause" to excuse his procedural default.

Petitioner asserts that his vacated state court conviction should be treated as a new fact which he has not previously had the opportunity to present. (Doc. 16 at 6). However, this fact does not impact the elements of § 1326 which Petitioner was convicted of.

Following the vacatur of his state court conviction, Petitioner's removal proceedings were dismissed without prejudice, not vacated. (Doc. 1-13). The term "vacate" means "to nullify or cancel; make void; invalidate[.]" *Black's Law Dictionary* (10th ed. 2014). In a host of legal contexts, the Ninth Circuit has held that vacatur retroactively invalidates the prior decision. *See, e.g., Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007) (holding that when the Appeals Council vacates an ALJ's original decision, "the ALJ's original finding no longer exist[s]."); *United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004) (distinguishing expungement from vacatur, and noting that, "[w]hen a court vacates a conviction, it sets aside or nullifies the conviction and its attendant legal disabilities[.]"). Nothing in immigration judge's order indicates that it was his intent to alter Petitioner's previous status as removable. (Doc. 1-13). Instead, the immigration judge altered Petitioner's future removability with a "dismissal without prejudice," which means "removed from the court's docket in such a way that the [Government] may refile the same [proceedings] on the same claim." *Black's Law Dictionary* (10th ed. 2014). Thus, the status of Petitioner's removal order as it stood in 2019 did not change. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) (holding that a dismissal without prejudice is not an adjudication on the merits and does not have a res judicata effect); *See United States v. Norbury*, 492 F.3d 1012, 1015 (9th Cir. 2007) ("[Defendant] asserts that the dismissal with prejudice of his state conviction amounts to a determination that the crime never occurred or that he was in fact innocent. The record does not support [defendant's] assertion. . . The dismissal neither alters the legality of the conviction nor indicates that [defendant] was actually innocent of the crime."). Again, the current status of Petitioner's removal order for purposes of his § 1326 conviction is irrelevant. *See Lewis*, 445 U.S. at 65. This Court finds that Petitioner has not presented a new fact that is relevant to the elements of his conviction.

Finally, the Court finds that Petitioner has not demonstrated the "actual innocence" exception to procedural default. As stated previously, Petitioner has not presented a new fact which would alter his Illegal Re-entry conviction. *See Bousley*, 523 U.S. at 166

("[A]ctual innocence means factual innocence, not mere legal insufficiency.") (internal quotations omitted). Petitioner argues in his Reply that he is factually innocent because if the judgment in this case was vacated, and if he were allowed to withdraw from his plea agreement, the Government could not, today, prove its case because Petitioner is not longer removable. (Doc. 16 at 16). However, the way Petitioner came to be non-removable is based on "legal" innocence not "factual" innocence. Specifically, Petitioner has made no argument that he is factually innocent of the 2001 state court crime. Further, Petitioner has made no argument that he was not factually removable when he was removed in 2002. Nor had Petitioner made any argument that he was factually permitted to re-enter the United States when he did so following his 2002 removal. Thus, Petitioner is factually guilty of the crime for which he was convicted in this case. Petitioner was legally able to undue his state court conviction and receive a more favorable plea agreement, which then allowed him to legally have his removal order dismissed, but neither of these occurred because Petitioner was factually innocent in either circumstance. Accordingly, the Court finds Petitioner cannot show "factual" innocence as is required in *Bousley* to overcome his procedural default of this claim.

Therefore, the Court finds Petitioner's claim in this case procedurally defaulted because it was not raised on direct appeal.

### C. Evidentiary Hearing

#### 1. Governing Law

When considering a § 2255 petition, the district court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255. A district court has the discretion to forego an evidentiary hearing and instead rely on the record, which may be supplemented by discovery and documentary evidence. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989).

#### 2. Analysis

Because the Court finds that all facts needed to rule on Petitioner's motion are

included in the briefs, an evidentiary hearing is not necessary to further develop the record. Additionally, the parties do not dispute any facts in this case.[6] Finally, Petitioner has not articulated any facts he would elicit or any witness he would call at an evidentiary hearing. Accordingly, on this record, the Court denies the request for an evidentiary hearing.

### D. Certificate of Appealability

#### 1. Governing Law

When a district court enters a final order adverse to the petitioner in a § 2255 proceeding, it must either issue or deny a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003) (quoting 28 U.S.C. § 2253(c)(2)). Under this standard, the petitioner must demonstrate that "reasonable jurists could debate whether [ ] the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citation and internal quotation marks omitted).

#### 2. Analysis

The Court finds that reasonable jurists could debate: 1) whether the collateral attack waiver in Petitioner's plea agreement is enforceable in this case; and 2) whether Petitioner can show actual innocence to overcome the procedural default of his claim in this case. Accordingly, the Court will grant a certificate of appealability on these two issues.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Petitioner's request for an evidentiary hearing is denied for the reasons stated above.

**IT IS FURTHER ORDERED** that Petitioner's motion to vacate, set aside or correct sentence (Doc. 1 in CV 20-531 and Doc. 42 in CR 19-633) is denied and dismissed

---

[6] The parties' dispute the legal basis of the state court's decision; however, Petitioner has not suggested that he would call the state court Judge and ask the Judge to explain the basis for the decision.

with prejudice and the Clerk of the Court shall enter judgment accordingly.

**IT IS FINALLY ORDERED** that a certificate of appealability and leave to proceed in forma pauperis on appeal are granted for the reasons stated above.

Dated this 17th day of August, 2021.

James A. Teilborg
Senior United States District Judge